09-1957-cv
Robert Sparks v. Charlotte Seltzer

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of June, two thousand ten.

PRESENT:
> ROSEMARY S. POOLER,
> DEBRA ANN LIVINGSTON,
> DENNY CHIN[*]
> > Circuit Judges,

_____

Robert Sparks, on behalf of himself and all others similarly situated, Mental Disability Law Clinic, Touro Law Center, on behalf of its constituents,

> Plaintiffs-Appellants,

> v.                                                         09-1957-cv

Charlotte Seltzer, in her official capacity of Executive Director of Creedmoor Psychiatric Center, Paulette Floyd, in her official capacity of Treatment Team Leader at Creedmoor Psychiatric Center,

> Defendants-Appellees.

_____

[*]Judge Chin was a District Judge at the United States District Court for the Southern District of New York, sitting by designation at the time of oral argument.

FOR APPELLANTS:          WILLIAM M. BROOKS, Mental Disability Law Clinic, Touro
                         College, Central Islip, NY

FOR APPELLEES:           DIANA R.H. WINTERS, Assistant Solicitor General, of counsel to
                         Andrew M. Cuomo, Attorney General of the State of New York
                         (Peter Karanjia and Barbara D. Underwood, on the brief), New
                         York, NY


        Appeal from a judgment of the United States District Court for the Eastern District of
New York (Gershon, J.).

        **IT IS HEREBY ORDERED** that the judgment of the district court be **AFFIRMED.**

        Plaintiffs are institutionalized psychiatric patients who challenge the Creedmoor
Psychiatric Center's policy of permitting patient visits to be supervised on the order of an
attending psychiatrist. Plaintiffs appeal a decision granting summary judgment for defendants,
and finding that the supervision of patient visits does not chill plaintiffs' speech or violate their
privacy rights. We assume the parties' familiarity with the case.

        Plaintiffs argue that defendants' policy of permitting supervision of patient visits on order
of a psychiatrist violates their First Amendment rights. Specifically, they argue that the
supervision of visits burdens their rights of familial association, and that this burden constitutes
an objective harm that chills their speech. The issue of the level of scrutiny to which burdens on
the associational rights of institutionalized psychiatric patients should be subject appears to be a
novel one in this Circuit. However, we do not reach this issue here because plaintiffs have not
preserved their freedom of association claim on appeal. Plaintiffs explicitly stated below that
they did not assert "a distinct cause of action for an association violation." Relying on this
concession, the district court refrained from analyzing whether Creedmoor's supervision policy
violated plaintiffs' associational rights. In spite of this, plaintiffs have substantially recast their
theory of the case on appeal.

        Plaintiffs argue that they did not waive their association claim because this claim is
merely "different in emphasis" from the claim they raised below. They concede, however, that
they stated below that they did not intend to assert a "distinct cause of action for an association
violation." Thus, even assuming plaintiffs did preserve a hybrid speech/association claim – a
claim we have not so far recognized in this court – in view of their disavowal of any independent
association claim, whatever association issues remain must be considered in the context of
plaintiffs' speech claim.

        The district court properly granted summary judgment for the defendants on plaintiffs'
speech claim. While the district court did not explicitly characterize this claim as a hybrid
speech/association claim, it nonetheless considered the associational aspects of the claim pressed
by the plaintiffs, as it addressed  the impact of defendants' policy on plaintiffs' ability to

2

converse with visiting family members and friends. Although, as the district court recognized, even "casual conversation among family members and friends" is entitled to some measure of First Amendment protection, to establish a First Amendment violation, a plaintiff must as a threshold matter show that her rights have been burdened or restricted. E.g., Tabbaa v. Chertoff, 509 F.3d 89, 102 (2d Cir. 2007). It is well-settled that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 13-14 (1972).

Plaintiffs' allegation that they are harmed by the presence of supervisors in or just outside the visiting room fails to satisfy the Laird "objective harm" requirement. We have held that even an actual investigation of a speaker, without more, does not constitute objective harm. See Fifth Ave. Peace Parade Comm. v. Gray, 480 F.2d 326, 330-32 (2d Cir. 1973) (where protesters alleged that FBI investigation into their activities would have a chilling effect, "[t]he shivering here was self-induced"). A fortiori, the mere possibility of being overheard by a state actor who is not conducting an investigation, but instead is merely on hand to respond in the event of an emergency does not constitute objective harm. Indeed, as defendants note, there was not even much evidence of subjective chill here: of those patients whose visits have been supervised, only one testified that the presence of staff in the visiting room discouraged him from talking about certain subjects.

Nor are we persuaded by plaintiffs' argument that the supervision policy runs afoul of Wolfish v. Levi, 573 F.2d 118 (2d Cir. 1978), which held that the interception of prisoner mail impermissibly burdens the prisoners' First Amendment rights. Id. at 130.[1] In Wolfish, prisoners challenged a policy permitting prison guards to "randomly and routinely read out-going, nonprivileged mail." 573 F.2d at 130. Here by contrast, plaintiffs do not allege that defendants intend to listen in on their conversations, or even that they necessarily overhear what they say. Indeed, it appears to be undisputed that plaintiffs can avoid being overheard by talking softly. Plaintiffs allege only that defendants' employees sit in a location where they may overhear conversations. Plaintiffs' claim that the possibility of being overheard may deter them from speaking freely. Again, this is the sort of "subjective chill" that is insufficient as a matter of law under Laird.

The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[1] Wolfish was overturned by Bell v. Wolfish, 441 U.S. 520 (1979). However, the Supreme Court explicitly noted that the prison officials did not challenge that portion of the decision enjoining the reading and inspection of inmate outgoing and incoming mail. Id. at 528 n.9.

3